U.S. DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

IN RE:
PAUL CAPUTO,

       Appellant                    CASE NO.: 1:13-cv-23542-RSR

v.

CAMILE CAPUTO,

       Appellee.

ON APPEAL FROM THE U.S. BANKRUPTCY COURT FOR THE SOUTHERN
DISTRICT OF FLORIDA,

HONORABLE JUDGE A. JAY CRISTOL, PRESIDING

**APPELLANT'S REPLY BRIEF**

**EDUARDO E. DIEPPA III, ESQ.**
Florida Bar No. 832901
Dieppa Law Firm P.A.
2097 West 76 Street
Hialeah FL 33016
Telephone: (305) 826-8266
Facsimile: (786) 513-0687

**TABLE OF CONTENTS**

Page No.

TABLE OF CONTENTS ..................................................................................... i

TABLE OF CITATIONS ................................................................................... ii

PRELIMINARY STATEMENT ........................................................................ iii

STATEMENT OF THE CASE ........................................................................... 1

SUMMARY OF ARGUMENT .......................................................................... 2

ARGUMENT .................................................................................................... 3

CONCLUSION ................................................................................................ 10

CERTIFICATE OF SERVICE ......................................................................... 11

# TABLE OF CITATIONS

## Case Law

**Name**                                                                **Page**

*Cummings  v. Cummings*,
   244 F.3d 1263, 1265 (11th Cir. 2001)……..…………………….………4

*In re Benson,*
   441 Fed. Appx. 650, 2011 WL 4435560 (11th Cir. 2011)………..4

*In re Gianakas*,
   917 F.2d 759, 762 (3rd. Cir. 1990)………………………………. 4

*In re McCollum,*
   415 B.R. 625, 631 (Bankr. M.D. Ga. 2009))…………………3, 4

*In Re F. Neal Pylant, Jr.,*
   Adv. Proc. 11-3056, U.S. Bankr. Court, M.D. GA, 2012)…………5

*In re Strickland,*
   90 F.3d 444, 446 (11th Cir. 1996)…………………………………….3

*In re: R. Don Throgmartin,*
   462 B.R. 836; 2012 Bankr. LEXIS 345……………………………5

## STATUTES

11 U.S.C.S. § 1326(b)(1)……………………………………………3

## **PRELIMINARY STATEMENT**

Plaintiff, PAUL CAPUTO, will be referred to herein as "Appellant," or if

necessary, individually as Paul Caputo.  Interested Party/Creditor Camile Caputo,

Mr. Caputo's ex-spouse, will be referred to herein as Camile Caputo or "Appellee".

## I. STATEMENT OF THE CASE

On September 12, 2011, Appellant (as Debtor) filed a Chapter 13 Bankruptcy in the Southern District of Florida.  Camile Caputo, the Debtor's ex-spouse, filed a priority claim based on the Final Order of Divorce dated November 14, 2007, which provided for a payment of $200,000 to Camile Caputo described as equitable property settlement.  However, the parties intended for the $200,000 to be used as support for Camile Caputo to buy a replacement home to maintain the same standard of living she was accustomed to, to compensate her for agreeing to a refinancing of the marital home, and for Camile Caputo's waiver of alimony.

Based on the nature of the agreement, Camile Caputo is a priority creditor and should be receiving payments pursuant to the chapter 13 plan.  Debtor made no provision for paying the debt in his Ch. 13 plan and filed an objection to the claim, which was set for evidentiary hearing.  On June 6, 2013, based on numerous factual findings in favor of Camile Caputo, the bankruptcy court found that the debt of $200,000 owed to Appellee was in the nature of a domestic support obligation and that Debtor has made partial payments amounting to $19,650 against the $200,000 debt.  At the hearing on Debtor's Motion for Reconsideration on the order overruling the objection to Camile's claim, the bankruptcy court denied the Motion for Rehearing and this appeal ensured.

1

## II.     SUMMARY OF ARGUMENT

This Honorable Court must affirm the trial court's Order finding that in the instant case, Camile Caputo's claim is a priority claim as part of Paul Caputo's chapter 13 plan.   Following the precedent from Cummings that required the Court to look beyond the labels assigned by the parties, the Court had to look through to the facts surrounding the agreement and determine the true intent of the parties.   Relying on several facts, but particularly a letter signed by the parties prior to the divorce, the Court found that the $200,000 debt was intended by the parties to be in the nature of alimony and support.   As such, Camile Caputo is a priority creditor that should be paid for post-petition support pursuant to 11 U.S.C.S. § 1326(b)(1) in the amount of $180,350 (the $200,000 domestic support obligation less the $18,650 actually paid by Debtor prior to the bankruptcy filing).

## III.   ARGUMENT

### a.   The Trial Court Did Not Abuse its Discretion In Overruling Appellant's Objection to Camile Caputo's priority claim, given that the debt owed to Appellee was in the nature of a Domestic Support Obligation.

Appellant appeals the Bankruptcy Court's June 13,2013 Order overruling Appellant's objection to Camile Caputo's priority claim (Claim No. 2) and the findings of fact set forth in the Order. (D.E.117).  Appellant asks this Court to find that it abused its discretion in finding that the nature of the debt owed by Paul Caputo, the Debtor, to Camile Caputo arising out of their divorce is in nature of support and not an equitable property settlement.  For the reasons set forth below, Appellee requests that the Court sustain the finding of the bankruptcy court and affirm the ruling below.

Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), domestic support obligations or DSOs are given priority over almost every other creditor.  Bankruptcy courts look to federal law as to the determination whether a debt is a domestic support obligation. *In re Strickland*, 90 F.3d 444, 446 (11th Cir. 1996).  The bankruptcy court is not bound by the language of the parties' agreement nor by a state court's interpretation of the same. Instead the bankruptcy courts must conduct a fact-specific factual determination.  In order to determine whether the agreement in question creates a spousal support obligation in favor of the creditor, the court should look "beyond any labels used by the parties and instead determine whether 'at the time of its creation the parties intended the obligation to function as support or alimony.'" *McCollum v. McCollum*, 415 B.R. 625, 631 (Bankr. M.D. Ga. 2009) (quoting *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001)); See also *In re Gianakas*, 917 F.2d 759, 762 (3rd. Cir. 1990).

3

Based on the holding of the Eleventh Circuit Court of Appeals in *Cummings v. Cummings,* 244 F.3d 1263, 1265 (11th Cir. 2001), the U.S. Bankruptcy Court for the Middle District of Georgia provided several factors it used to determine whether a debt was actually in the nature of support or alimony:

> (1) the agreement's language; (2) the parties' financial positions when the agreement was made; (3) the amount of the division; (4) whether the obligation ends upon death or remarriage of the beneficiary; (5) the frequency and number of payments; (6) whether the agreement waives other support rights; (7) whether the obligation can be modified or enforced in state court; and finally (8) how the obligation is treated for tax purposes.

*McCollum v. McCollum*, 415 B.R. 625, 631 (Bankr. M.D. Ga. 2009)

Following its decision in *Cummings*, the Eleventh Circuit of Appeals held in *In re Benson* that mortgage payments that a former husband was required to make on his former wife's residence pursuant to a "property settlement agreement" constituted a "domestic support obligation." See *In re Benson*, 441 Fed. Appx. 650, 2011 WL 4435560 (11th Cir. 2011). The *Benson* court pointed to the holding in *Cummings* that courts should look beyond the label given to a particular debt by the parties.  In finding that the arrangement created a DSO, the *Benson* Court cited the following facts: (1) waiver of alimony by the former spouse, (2) the language of the property settlement agreement that required the debtor to maintain life insurance sufficient to cover the mortgage obligation; (3) the language of the property settlement agreement that permitted the debtor to claim a tax exemption for the minor children as long as he paid the mortgage; (4) the state court order finding the debtor in contempt for failure to pay

the mortgage; and (5) the fact that the spouse had not worked outside the home for at least a decade at prior to signing the agreement.

More recently, the U.S. Bankruptcy Court for the Middle District of Florida overruled a debtor's objections against his ex-spouse's claim for child support as a priority allowed claim for domestic support obligation. *In re: R. Don Throgmartin*, 462 B.R. 836; 2012 Bankr. LEXIS 345; 23 Fla. L. Weekly Fed. B 232.  In *Throgmartin*, the debtor and his ex-spouse had entered into a settlement agreement requiring him to pay $31,000 monthly to the former spouse.  In the debtor's bankruptcy, the former spouse filed a priority claim for $302,000 in past due payments and debtor objected to the claim. The Court found that the debtor's obligation was in the nature of support, not alimony and allowed the ex-spouse's priority claim.

In a case from the U.S. Bankruptcy Court for the Middle District of Georgia involving nearly identical questions of fact, Judge James P. Smith issued an Amended Memorandum Opinion in the adversary proceeding brought by a former spouse against the debtor (*In re: F. Neal Pylant Jr.*, Case No. 11-30671, March 20, 2012).  In the *Pylant* decision, after holding an evidentiary hearing, Judge Smith found that the agreement at issue created a DSO.  In particular, the court relied on the testimony of the creditor, ex-spouse, that the payment was intended to permit her to purchase a replacement home and noted as significant her waiver of alimony, the difference in financial position between debtor and the ex-spouse at the time the agreement was made, and the fact that the creditor has not worked outside the home for several years prior to the divorce was finalized.

In the instant case, the agreement between Paul Caputo and Camile Caputo should also be read to create a support obligation because of the specific facts of this case.  As set forth in Judge Cristol's findings of fact, in exchange for accepting the $200,000 payment, Camile Caputo (like the ex-spouse creditor in *Pylant* and *Benson*) had waived alimony, was not working outside the home, was in a much poorer economic position that the debtor, gave up a comfortable lifestyle, was not represented by legal counsel or employed at the time of the divorce, and received none of the proceeds of the refinancing of their marital home.

Significantly, Camile and Paul also signed a document that specifically set out their understanding that Camile Caputo was allowing additional debt to be taken on the marital property in both their names (which Paul defaulted on) immediately prior to the divorce, because the $200,000 was going to be treated as support, and not a property settlement.   Exhibit C-8. This Agreement spelled out their intent that the $200,000 was in fact alimony and was also an inducement to obtain Camile's execution of the loan documents for which Paul would be receiving loan proceeds.   Camile Caputo confirmed their intention in her testimony at the hearing.  Transcript of May 16, 2013 hearing, Page 11, Lines 12-19 (D.E. 147).

Q.    Did Paul ask you to take on debt or agree to become a co-signer on debt as part of the divorce?

A.    Yes, he did.

Q.    Why did he ask you to do that?

A.    Because he said the alimony would be called equitable distribution because the debt would be an equity line of credit that we would both have to sign and that would be the money that he would pay me.

At the time of the divorce, there was a significant disparity between the financial positions and employment.  Camile Caputo was unemployed and had no assets and was giving up rights to the marital property (valued nearly $900,000) and the family business.  Paul Caputo continued occupying the home, obtained additional monies from refinancing the home, continued operating the business, and was working. He also had worked in the financial industry.  Transcript, Page 13, Lines 2-13.

Q.    Yes. Did you have savings?

A.    No.

Q.    Did you have a retirement plan?

A.    No.

Q.    Did you have any heirlooms?

A.    No.

Q.    Did you personally only a business?

A.    The business that we had together, but I walked away from it. I don't know what happened to it.

Q.    So, as part of your divorce you gave up your rights to the marital home?

A.    Yes.

Q.    And you gave up the rights to the businesses that you and Paul co-owned?

7

A.    Yes.

Perhaps most supportive of Camile's claim is the signed one page letter that Camile and Paul Caputo signed before the parties divorced.  See Exhibit 8. The document actually memorializes their agreement that Camile was receiving the $200,000 payment as alimony, and that they would be labelling it as an equitable property distribution in the divorce.  As seen in the Transcript of May 16, 2013 hearing, Page 15, Line 21- Page 16, Line 11 (D.E. 147).

Q.    Why did you and Paul sign this one page document?

A.    This was our agreement that I would get alimony and, even though he was calling it something else in our divorce agreement.  I didn't have a lawyer -- he wouldn't -- I was completely dependent on my husband.  I didn't have legal advice to have someone tell me that alimony – the difference between alimony and equitable distribution, and because the money was coming from – my alimony was coming from equity from the house, it sounded like a very reasonable – it made sense to me.

Q.    And that is why – is that the reason you agreed to this specific language in the marital settlement agreement, which is Exhibit C-1?

A.    That's correct.

Based on that understanding, Camile Caputo testified that she also agreed to waive alimony. Transcript of May 16, 2013 hearing, Page 16, Lines 21-23.

Taken as a whole, the specific facts surrounding the intentions of Paul Caputo and his ex-spouse Camile Caputo all lend to the conclusion that the $200,000 owed must be classified as support under federal law and not as a property distribution as

8

labelled in the marital settlement agreement. Pursuant to the holdings in *Throgmartin, McCollum* and *Benson*, this Court must find that the bankruptcy court's ruling was not clearly erroneous when it overruled the Debtor's Objection No. 2 and made specific findings of fact under the *Cummings* test that found the nature of the debt to be in support because, among other facts, Camile Caputo had irrevocably waived alimony, Camile had not been employed, Paul Caputo had been primary earner, Paul Caputo had retained the home, Paul Caputo had retained the proceeds of the new loan, and the parties had signed a prior written agreement showing their intention that the $200,000 was actually alimony.

## IV. CONCLUSION

For the foregoing reasons, the decisions of the bankruptcy court below delineated herein, the Order overruling Paul Caputo's Objection to Camile Caputo's priority claim (Claim No. 2) and finding that the $200,000 owed to Camile Caputo is in the nature of the support should be sustained.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I am admitted to the Bar of the United States District Court for the Southern District of Florida and I am in compliance with the additional qualifications to practice in this Court set forth in Local Rule 2090-1(A) and that on this 23rd day of October, 2013, that the foregoing document is being served this day on all counsel of record or pro se parties identified below via transmission of Notices of Electronic Filing generated by CM/ECF.

*/Eduardo E. Dieppa III/*

Eduardo E. Dieppa, Esq.

ATTORNEYS FOR APPELLANT:

Michael Frank, Esq., mfrank@bkclawmiami.com

By: /s/ Eduardo E. Dieppa III
**EDUARDO E. DIEPPA III, ESQ.**
Florida Bar No. 832901
Dieppa Law Firm P.A.
2097 West 76 Street
Hialeah FL 33016
Telephone: (305) 826-8266
Facsimile: (786) 513-0687
edieppa@dieppalaw.com

11