UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 13-23542-CIV-ROSENBAUM

In re:

PAUL RICHARD CAPUTO,

    Appellant,

v.

CAMILE CAPUTO,

    Appellee.

_____/

## OPINION AND ORDER

This matter is before the Court upon the Brief of Appellant Paul Richard Caputo [ECF No. 8]. The Court has considered the brief, all supporting and opposing filings, and the record in this case. For the reasons set forth below, the Court affirms the Bankruptcy Court's determination that the $180,350.00 owed by Debtor Paul Richard Caputo to his ex-wife Creditor Camile Caputo is in the nature of support or alimony and is therefore non-dischargeable.

### *BACKGROUND*

On May 30, 2012, Appellant Debtor Paul Richard Caputo filed a voluntary petition for Chapter 13 bankruptcy. *In re Caputo*, No. 12-23166, ECF No. 1 (Bankr. S.D. Fla. May 30, 2012). Paul Caputo's Chapter 13 Plan proposed that the $180,000.00 in "equitable distribution" that he owes his ex-wife, Appellee Creditor Camile Caputo, be discharged upon completion of the bankruptcy case. *Caputo*, No. 12-23166, ECF No. 12 at 1 (Bankr. S.D. Fla. June 12, 2012). But Camile Caputo objected to the classification of this debt as an equitable distribution and argued that it should, instead, be considered a domestic-support obligation that is non-dischargeable. *See*

*Caputo*, No. 12-23166, ECF No. 117 at 2 (Bankr. S.D. Fla. June 13, 2013).

On June 13, 2013, after an evidentiary hearing, the Honorable A. Jay Cristol issued an Order finding the $180,350.00[1] owed to Camile Caputo to be in the nature of support or alimony and thus non-dischargeable. *Id.* at 4. Paul Caputo moved to reconsider this Order, but Judge Cristol denied the Motion to Reconsider. *Caputo*, No. 12-23166, ECF No. 133 (Bankr. S.D. Fla. July 18, 2013). Paul Caputo now appeals both the June 13, 2013, Order and the Order denying reconsideration of that Order to this Court. ECF No. 1.

## *JURISDICTION*

Federal courts are courts of limited jurisdiction. *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 807 (11th Cir. 2003). With regard to appeals from bankruptcy courts, district courts enjoy jurisdiction over only three types of orders: (1) final orders, as described in 28 U.S.C. § 158(a)(1); (2) interlocutory appeals issued under 11 U.S.C. § 1121(d), as described in 28 U.S.C. § 158(a)(2); and, (3) with leave of the court, other interlocutory orders, as described in 28 U.S.C. § 158(a)(3) and Fed. R. Bankr. Pro. 8001(b). *Tobkin v. Calderin*, 2012 WL 3609867, at *1 (S.D. Fla. Aug. 22, 2012). As this Court has explained, district courts have jurisdiction to hear appeals "from final judgments, orders, and decrees." *Id.* at *1-*2; 28 U.S.C. § 158(a)(1).

An order declaring debt to be dischargeable or not is a final, appealable order. *See In re Golant*, 239 F.3d 931, 934 (7th Cir. 2001) (quoting *In the Matter of Marchiando*, 13 F.3d 1111, 1113-14 (7th Cir. 1994) ("Ordinarily, 'a request for a declaration of nondischargeability is conceived as kicking off a separate, adversary proceeding within the framework of the overall bankruptcy

---

[1] Paul Caputo is obliged to pay Camile Caputo $200,000.00 under the marital settlement agreement, of which Paul Caputo has already paid $19,650.00. *See* ECF No. 1 at 4.

proceeding . . . so that an order declaring the debt either dischargeable or not is a final, appealable order.'"); *see also In re Carney*, 258 F.3d 415, 417 (5th Cir. 2001). An order that seeks reconsideration of an otherwise final order is itself a final, appealable order. *See In re Grabill Corp.*, 983 F.2d 773, 775-76 (7th Cir. 1993) (explaining that motion for reconsideration of a final judgment renders that original judgment nonfinal because it is the order on the motion for reconsideration that ends the case and is, therefore, final). This Court therefore has jurisdiction to hear the appeal of the two Bankruptcy Court Orders.

## *STANDARD OF REVIEW*

Bankruptcy courts are governed by the Federal Rules of Bankruptcy Procedure. Under Rule 8013, Fed. R. Bankr. P., a district court reviews the factual findings of a bankruptcy court for clear error. As for the conclusions of law of the bankruptcy court and the application of the law to the particular facts of the case, a district court must conduct a *de novo* review. *See In re Feingold*, 474 B.R. 293, 294 (S.D. Fla. 2012) (citing *In re Globe Mfg. Corp.*, 567 F.3d 1291, 1296 (11th Cir. 2009); *In re Club Assocs.*, 951 F.2d 1223, 1228-29 (11th Cir.1992)) ("The Court reviews the Bankruptcy Court's factual findings for clear error and its legal conclusions *de novo*").

## *DISCUSSION*

Ordinarily, a bankruptcy court may grant a Chapter 13 debtor the discharge of all debts provided for by the plan upon the completion of all plan payments. 11 U.S.C. § 1328(a). But the Code specifically provides that, "in the case of a debtor who is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, [the debts may be discharged only] after such debtor certifies that all amounts payable under such order or such statute that are due on or before the date of the certification (including amounts due before the petition was

filed, but only to the extent provided for by the plan) have been paid, unless the court approves a written waiver of discharge executed by the debtor after the order for relief under this chapter." *Id.* And, while the bankruptcy court may, after notice and a hearing, discharge a particular debt after confirmation of the plan but prior to the completion of all plan payments, *see id.* § 1328(b), domestic-support obligations are specifically exempted from dischargeability prior to completion of the plan. *Id.* § 523(a)(5). In short, "domestic support obligations cannot be discharged in bankruptcy." *In re Davis*, 481 F. App'x 492, 494 (11th Cir. 2012).

The Code defines "domestic support obligation," in relevant part, as a debt owed to a "former spouse . . . in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such . . . former spouse . . . without regard to whether such debt is expressly so designated . . . [and established by] a separation agreement, divorce decree, or property settlement agreement." 11 U.S.C. § 101(14A). Thus, "a given domestic obligation is not dischargeable if it is 'actually in the nature of' alimony, maintenance, or support.'" *Cummings v. Cummings*, 244 F.3d 1263, 1265 (11th Cir. 2001) (quoting *In re Harrell*, 754 F.2d 902, 904 (11th Cir. 1985)).

A bankruptcy court must therefore undertake "a simple inquiry as to whether the obligation can legitimately be characterized as support, that is, whether it is in the nature of support." *Cummings*, 244 F.3d at 1265 (quoting *Harrell*, 754 F.2d at 906). In conducting this inquiry, the court "cannot rely solely on the label used by the parties" and must "look beyond the label to examine whether the debt actually is in the nature of support or alimony." *Cummings*, 244 F.3d at 1265. A debt is "in the nature of alimony, maintenance, or support" if "at the time of its creation the parties intended the obligation to function as support or alimony." *Id.* (collecting cases).

Factors that the Eleventh Circuit has identified as supporting the classification of a given

-4-

payment obligation as a "domestic support obligation" include the following:

> (1) the agreement's language; (2) the parties' financial positions when the agreement was made; (3) the amount of the division; (4) whether the obligation ends upon death or remarriage of the beneficiary; (5) the frequency and number of payments; (6) whether the agreement waives other support rights; (7) whether the obligation can be modified or enforced in state court; and finally (8) how the obligation is treated for tax purposes.

*In re Benson*, 441 F. App'x 650, 651 (11th Cir. 2011) (citing *In re McCollum*, 415 B.R. 625, 631 (Bankr. M.D. Ga. 2009)). Notwithstanding the various factors relevant to the inquiry, "the touchstone for dischargeability [of a domestic-support obligation] is the intent of the parties." *Cummings*, 244 F.3d at 1266 (citing *In re Sampson*, 997 F.2d 717, 723 (10th Cir. 1993)).

Here, after a hearing, Judge Cristol made a number of findings that support the conclusion that the money Paul Caputo owed Camile Caputo was a domestic-support obligation:

> a) Camile Caputo irrevocably waived alimony in the Marital Settlement Agreement in exchange for the $200,000.00 payment;
>
> b) Camile Caputo gave up all rights in the marital home;
>
> c) Camile Caputo was unemployed and had to seek assistance from family members to be able to pay expenses and rent a studio apartment;
>
> d) Camile Caputo was induced to sign and become liable for a new equity line of credit mortgage on the marital home immediately prior to the divorce by Debtor in exchange for the $200,000 payment;
>
> e) Debtor retained the marital home;
>
> f) Debtor retained the majority of the refinancing proceeds for his personal use;
>
> g) Debtor did not produce records or contradictory evidence relating to the payments made on the $200,000.00 settlement amount showing he paid more than $19,560 of this amount to Camile Caputo[;]

>    h) Debtor was an experienced business person who had worked both in real estate and the financial services industries;
>
>    i) Prior to signing the Marital Settlement Agreement, the parties executed a one page document stating that the $200,000 would be deemed lump sum alimony;
>
>    j) Prior to the divorce, Camile Caputo and Debtor lived comfortably, with live-in assistance, in a home worth no less than $550,000;
>
>    k) Camile Caputo was not represented by counsel at all relevant times.

ECF No. 1 at 3-4.

Debtor challenges the Bankrutpcy Court's determination and points to Camile Caputo's testimony in which she indicated that, under the marital settlement agreement, she specifically waived any right to alimony in exchange for the $200,000.00 payment, labeled an "equitable distribution." ECF No. 8 at 4-6. But this testimony is evidence of only the "label used by the parties" and not the true nature of the payment. *See Cummings*, 244 F.3d at 1265. Significantly, Camile Caputo testified, with respect to the agreement,

> "This was our agreement that I would get alimony and, even though he was calling it something else in our divorce agreement. I didn't have a lawyer—he wouldn't—I was completely dependent on my husband. I didn't have legal advice to have someone tell me that alimony—the difference between alimony and equitable distribution, and because the money was coming from— my alimony was coming from equity from the house, it sounded like a very reasonable—it made sense to me."

ECF No. 4 at 15:23-16:7; *see also Cummings*, 244 F.3d at 1266 (quoting *In re Gianakas*, 917 F.2d 759, 763 (3d Cir. 1990)) ("[E]ven an obligation designated as [a] property settlement may be related to support because state courts often will adjust alimony awards depending on the nature and amount of marital assets available for distribution."). In addition, as noted by Judge Cristol, the parties

signed a one-page document prior to the marital settlement agreement indicating their intent that the $200,000.00 payment would be deemed lump-sum alimony. ECF No. 2-2 at 169. Thus, the record clearly indicates the parties' intent that the payment be in the nature of support or alimony.

Paul Caputo also points to the testimony of Camile Caputo to challenge the Bankruptcy Court's determination that Camile Caputo "was not represented by counsel at all relevant times." ECF No. 8 at 5-6. Paul Caputo notes that Camile Caputo testified that she had legal representation in December 2012, when she signed an addendum to the marital settlement agreement. ECF No. 4 at 30:19-31:3. Even so, Camile Caputo testified that she did not have legal representation at the time of signing the original marital settlement agreement. ECF No. 4 at 15:23-16:7. Even if Camile Caputo obtained legal representation after the divorce, the Bankruptcy Court did not clearly err by determining that Camile Caputo lacked legal representation at all times relevant to the divorce proceedings. Accordingly, the Court affirms the Bankruptcy Court's Order.

## *CONCLUSION*

For the foregoing reasons, the Bankruptcy Court's Order Overruling Debtor's Objection to Claim No. 2 Filed by Camile Caputo and the Order Denying Debtor's Motion to Reconsider the Memorandum Decision Opinion (D.E. 117) are both **AFFIRMED.** The Clerk of Court shall **CLOSE** this case. All pending motions are **DENIED as MOOT.**

**DONE and ORDERED** in Fort Lauderdale, Florida, this 18th day of April 2014.

ROBIN S. ROSENBAUM
UNITED STATES DISTRICT JUDGE

Copies:
Counsel of Record